

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, LP and KENNETH BEAUFORD | § | No. 08-23-00096-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | 70th Judicial District Court |
| v. | | |
| | § | of Ector County, Texas |
| ELMER SANCHEZ, | | |
| | § | (TC# A-18-01-0127-CV) |
| Appellee. | | |

## **O P I N I O N**

"If, as it is often said, a picture is worth a thousand words, then video is worth exponentially more. . . . A video can be the single most compelling piece of evidence in a case, captivating the jury's attention like no other evidence could."[1]

A surveillance video of a plaintiff who sued for personal injuries is at the heart of this case. Appellants National OilWell Varco, LP and Kenneth Beauford (collectively NOV) appeal the exclusion of a post-accident surveillance video of Appellee Elmer Sanchez showing him at work as a tool pusher. While the parties hotly contest the ultimate relevance of the footage, this case ultimately turns on the more technical questions of: (1) whether the evidence was timely produced in discovery, and if not; (2) whether any exception to the late production of evidence might apply;

---

[1] *Diamond Offshore Services Ltd. v. Williams*, 542 S.W.3d 539, 541 (Tex. 2018) (footnotes omitted).

and (3) whether a trial court must always watch a video before excluding it. Under the governing discovery rules and record before us, we conclude that the trial court did not abuse its discretion in excluding the surveillance video under the several arguments that NOV advances here. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. The accident

While waiting to merge into traffic, Sanchez and his wife were hit from behind by a work truck driven by Keith Beauford who was on the job for National OilWell Varco. Sanchez declined immediate medical assistance at the scene; instead, he and his wife continued to a planned birthday dinner. The day after the accident, however, Sanchez reported feeling soreness in his back and neck and a tingling sensation in his hands. Two months after the accident, Sanchez sought medical treatment from doctors, who concluded that he would need surgery and ongoing treatment. He would later attribute any delay in seeing a doctor to his lack of health insurance and willingness to endure the discomfort.

### B. The lawsuit

In January 2018 Sanchez sued NOV and its driver (identified in later petitions as Beauford) for negligence in causing the collision. Sanchez sought past and future damages for physical pain and mental anguish, physical impairment, disfigurement, loss of wages, and medical care. The original petition included within its body a request for disclosure under TEX. R. CIV. P. 194.1, and as relevant here, a request for production for "[a]ny and all photographs, electronic or videotape

---

[2] This case was transferred to our Court from the Eleventh Court of Appeals, and we apply its precedents to the extent that they may conflict with our own. *See* TEX. R. APP. P. 41.3.

2

recordings depicting Plaintiff, the incident scene, and/or any vehicles or products involved in this incident" and "photographs or electronic images of any sort that you intend to offer into evidence."

## C. The discovery deadline and the surveillance video

The parties agreed, and the trial court approved, a discovery control plan that required them to file all discovery requests by January 7, 2022. Under the order, the parties were to be "trial ready" by February 25, 2022. The case was later set for trial on January 23, 2023.[3] On December 27, 2022—the 27th day before trial—NOV served its second amended responses to requests for disclosure that for the first time disclosed the names and contact information for two persons knowledgeable about a surveillance video taken of Sanchez. The response attached the video, which has a date stamp suggesting it was recorded on September 21, 2022. The disclosure stated the two persons had "knowledge regarding Mr. Sanchez' physical abilities as recorded in the produced video."

On January 10, 2023, Sanchez's counsel filed a motion to exclude the witnesses and video; the court set a hearing on that motion for January 20th. The motion attached NOV's prior responses to requests for disclosure and answers to interrogatories made over the course of the litigation. Those responses showed that December 27, 2022 was the first disclosure of the witnesses who took the video or existence of the video. Sanchez's motion sought to exclude the evidence and witnesses under Rule 193.6 because they were untimely disclosed.[4] NOV did not file a written response to the motion.

---

[3] The last written order for a trial setting in our record was for a September 26, 2022 trial date. Although we do not have the written order resetting the case, the parties' briefing agrees that January 23, 2023 was the eventual trial date, and that date was the first day of voir dire.

[4] TEX. R. CIV. P. 193.6(a) ("A party who fails to make, amend, or supplement a discovery response . . . in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . ." unless the court find good cause or lack of unfair prejudice or unfair surprise).

At the motion to exclude hearing, Sanchez re-urged his argument that the evidence was untimely, as to both a January 7, 2022 discovery deadline and the 30-day deadline for presumptive untimeliness under the Rules of Civil Procedure.[5] NOV responded with only two arguments. First it asserted that the surveillance footage is not governed by the discovery rules because it is "investigation." When the trial court asked about the individuals named as persons with relevant knowledge, NOV's counsel disclaimed any intention to call them as witnesses. However, counsel acknowledged NOV's intent to play the video during trial. Second, NOV claimed the video had been produced to Sanchez in September by placing it in a "Dropbox" link for Sanchez to review.[6] NOV's counsel referenced multiple conversations with Sanchez's counsel "after we produced this" (but did not describe the substance of the conversations). Counsel also offered to "produce the Dropbox file" to the court (but it was never included as a part of the record). In retort to this claim, Sanchez's counsel provided the trial court an email chain attached to a response he had received the morning of the hearing (neither the "response" or email chain is part of the appellate record). Sanchez's counsel claimed the email chain proved "we didn't get a Dropbox, or we didn't see it." The trial judge stated his intent to contact one of Sanchez's co-counsels to follow up on the Dropbox issue. But when the trial court pressed NOV on when it disclosed the names of the person who took the video, NOV confirmed it did not identify those persons until December 27, 2022. NOV also acknowledged that it knew of those persons' identity in September. The trial court then concluded the hearing by excluding the video and witnesses who took it.

---

[5] "[I]t is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly." TEX. R. CIV. P. 193.5(b).

[6] Dropbox is the tradename for a service that allows the transfer of files—usually those too large to simply email. *See Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1019 n. 2 (5th Cir. 2023) ("Dropbox is a company that hosts an off-site virtual storage application . . . [a]fter creating an account, users may place items in a Dropbox folder and then access them remotely through the application[.]").

**D**. **The trial**

At trial the parties contested liability, and the extent and cause of Sanchez' physical problems. Most prominent, the parties hotly disputed whether Mr. Sanchez's condition resulted from the collision or age-related degeneration. Dr. Cunningham, Sanchez's treating physician, testified that Sanchez's injuries resulted from the accident, and that he would need surgery to his lumbar spine for a disc injury and his hand for carpal tunnel. NOV relied on its expert, Dr. Gundanna, who testified Sanchez's injuries resulted from long-term degeneration and that Sanchez suffered only minor strains from the accident. According to Dr. Gundanna, those injuries should have resolved within 8 to 12 weeks after the accident.

Relevant here, Sanchez testified to how the injuries cause him pain and impair his ability to work. Sanchez testified that before the collision, he engaged in physical labor for 16 years with no issues. But post-accident, he started a job with a new company. He testified that he had to quit that job three weeks later because he could not bear the pain. He also testified to having a succession of jobs post-accident because he could not work as before.

At the time of trial, Sanchez had been working for six months as a tool pusher for American Well Services. He supervises a crew of six persons, making sure they have their equipment. He also uses a forklift to set pipe on a pipe rack. During cross-examination, NOV's counsel asked Sanchez whether he is required to (1) lift objects, (2) bend at the waist, and (3) manipulate pipe onto a forklift. Sanchez responded that the heaviest thing he lifts at work is trash, that he bends with difficulty, and that he does not pick up the pipes but has his workers lift them for him. At this point of the trial, NOV tried to admit the surveillance videotape as impeachment evidence. In its offer of proof, NOV argued that the footage directly refuted Sanchez's testimony of his pain and

limitations because the footage depicted Sanchez engaging in physical activity at his current job with apparent ease. The trial court refused to admit the evidence for impeachment purposes.

Nothing in the record shows the trial court ever viewed the video. The original 43-minute surveillance video in our record is condensed to 16 minutes and 32 seconds. A time stamp suggests it was shot on September 21, 2022. The video depicts Sanchez at his worksite. He is seen walking around the worksite, surrounded by a few other workers and heavy machinery. At one point, Sanchez bends down to lift the edge of a long black pipe from the ground with both hands. He maneuvers the edge of the pipe onto the forklift. He then moves to other side of the forklift and lifts the edge of another pipe a few inches off the ground, similarly pushing it onto the forklift. Later in the video, Sanchez bends down once again to lift another pipe a few inches off the ground and drops it onto the forks of the forklift.[7] The video also captures Sanchez bending at the waist to pick up trash and at one point he picks up a small piece of wood. In another shot, Sanchez uses one hand to grab a trashcan and drag it several feet across the ground. He then lifts a larger trashcan and dumps its contents into the smaller trashcan. In between these actions, Sanchez stands around and sometimes communicates with other workers. And in the last five minutes of the video, Sanchez talks with one colleague, as the two watch the other operations taking place.

Later in the trial, NOV asked to admit the video through its expert, Dr. Gundanna. In an offer of proof, Dr. Gundanna testified that as part of his review, he viewed the surveillance tape. The doctor observed that Sanchez moved "around easily and without any painful gait or painful stance." But he also testified that the video did not change his conclusions about the case, it "just indicates his current status at the time of the video in that he was doing very strenuous activities

---

[7] The pipe is black in color. Nothing in the record shows the composition or specific weight of the pipe he is lifting in the video; the pipe appears to bend as Sanchez lifts one end of it.

repetitively." The trial court declined to change its earlier ruling and excluded this testimony and the surveillance footage.

### E. The jury's verdict

The jury found Beauford negligent.[8] It answered the damages questions as follows:

| | |
|---|---|
| Physical pain and mental anguish (past) | $70,000. |
| Physical pain and mental anguish (future) | $0. |
| Physical impairment (past) | $70,000. |
| Physical impairment (future) | $60,000. |
| Reasonable medical expenses (past) | $40,000. |
| Reasonable medical expenses (future) | $280,000. |
| Disfigurement (future) | $0.[9] |

NOV filed a motion for new trial that only complained about the sufficiency of the evidence to support the liability finding and damage awards. On appeal, NOV shifts its argument to the exclusion of the surveillance video evidence.

## STANDARD OF REVIEW

We review decisions to admit or exclude evidence for abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). The same abuse of discretion standard

---

[8] The trial court directed a verdict in favor or National OilWell Varco on Sanchez' negligent hiring, retention, training, and supervision claims. So only Beauford was included in the jury questions, but as National OilWell Varco admitted to course and scope of employment, both Beauford and National OilWell Varco are named as liable in the judgment.

[9] Sanchez asked for higher awards for past and future medical expenses. He put on evidence of $52,354 in past medical expenses. NOV put on evidence disputing the charges for the various bills. Sanchez also offered testimony from a lifecare plan, reduced to present value, projecting just over one-half-million dollars in future care and expenses. That plan, however, included a projected neck surgery that Sanchez's doctor testified at trial he no longer needed. In closing, Sanchez's counsel suggested the jury could reduce the lifecare plan amounts down accordingly.

governs review of a trial court's ruling excluding undesignated witnesses. *F.W. Indus., Inc. v. McKeehan*, 198 S.W.3d 217, 220 (Tex. App.—Eastland 2005, no pet.). And we use the same standard for a trial court's decision to exclude evidence under Texas Rule of Civil Procedure 193.6. *Matter of Est. of Bristow*, No. 11-22-00035-CV, 2023 WL 7198344, at *9 (Tex. App.—Eastland Nov. 2, 2023, no pet.) (mem. op.) (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)).

A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See State Bar of Texas v. Evans*, 774 S.W.2d 656, 658 n. 5 (Tex. 1989). Stated otherwise, if the trial court's decision lies within the zone of reasonable disagreement, we must uphold it. *Diamond Offshore Services Limited v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). Finally, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins.*, Co., 765 S.W.2d 394, 396 (Tex. 1989).

## ISSUES ON APPEAL

NOV raises six issues on appeal, all of which focus on the excluded video. Its first and third issues complains that the trial court could not exclude the video without first viewing it as directed in *Diamond Offshore Services Ltd.*, 542 S.W.3d at 548. Its second issue argues the trial court abused its discretion by excluding the video as untimely. NOV's fourth issue complains that the trial court abused its discretion by excluding it (again without watching the video) as impeachment evidence. The fifth issue complains that the video should have been admitted through NOV's expert, who reviewed it as part of arriving at this opinion. NOV's last issue claims the above errors were harmful. We take the issues in a different order.

## DISCUSSION

### A.  Exclusion of the video as untimely produced

In its second issue, NOV contends the trial court erred in excluding the surveillance tape based on untimely disclosure. We start with the deadline for supplementing discovery.

In their discovery control order, the parties agreed that this is a Level 3 case. For Level 3 cases, Rule 190.4 states, "[t]he court must . . . order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit." TEX. R. CIV. P. 190.4(a). The discovery control plan must set out, among other things, "a discovery period during which either all discovery must be conducted or all discovery requests must be sent . . . ." *Id.* at 190.4(b)(2). The parties' discovery control order set January 7, 2022 as a deadline for filing all discovery requests and deposition notices. Any discovery served by that date would be due 30 days later. TEX. R. CIV. P. 196.2. Here, Sanchez had served request for disclosure (asking for the identity of persons with relevant knowledge) and requests for production (asking for "[a]ny and all photographs, electronic or videotape recordings depicting Plaintiff, the incident scene, and/or any vehicles or products involved in this incident") years earlier in the litigation.

The responding party "must make a complete response, based on all information reasonably available to the responding party or its attorney at the time the response is made." *Id.* at 193.1. The responding party also has a duty to supplement their discovery responses throughout the litigation promptly if the responding party knows its responses are incorrect or incomplete. *Id* at 193.5. The rules presume that a response made less than 30 days before trial was not made reasonably promptly. *Id.* And under Rule 193.6

> [a] party who fails to make, amend, or supplement a discovery response . . . in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . unless the court finds that:

9

(1) there was good cause for the failure to timely, make amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

*Id.* 193.6(a). [10]

Once a trial court determines that a witness was not timely designated, it must also inquire into the good cause and lack of unfair surprise or unfair prejudice exceptions. *Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023). But the burden for showing good cause or lack of unfair surprise or prejudice falls on the party offering the undisclosed evidence. TEX. R. CIV. P. 193.6(b). A finding of good cause, lack of unfair surprise, or lack of unfair prejudice "must be supported by the record." *Id.* The "record" may include evidence, but it also might include undisputed representations by counsel. *Jackson*, 675 S.W.3d at 6.

NOV raises several arguments for why the trial court could not exclude the surveillance video under Rule 193.6. First, NOV argues that it was under no duty to disclose the video because it was not responsive to any discovery request, and Sanchez failed to cite to any discovery request in his motion to exclude. *See Monzingo v. Flories*, No. 05-22-00719-CV, 2023 WL 6632799, at *3 (Tex. App.—Dallas Oct. 12, 2023, no pet. h.) (mem. op.) (holding that a party seeking to exclude evidence under Rule 193.6 carries the "threshold burden of proving a violation of the discovery rules"). But this argument was never raised below and cannot be considered here. [11] As

---

[10] The discovery control order here also states that "[l]imitations on discovery shall be governed by provisions in the Texas Rules of Civil Procedure applicable to this level of [d]iscovery . . . ." Thus, the limitation on time to file a supplemental response provided in 193.5 applies here.

[11] Even at that, Sanchez' Request for Production found in Sanchez's Original and Amended Petition requested "any and all photographs, *electronic or videotape recordings depicting Plaintiff*, the incident scene, and/or any vehicles or products involved in this incident." (emphasis added). NOV responds that when read in context, the request was only seeking photographs and videos taken at the accident scene or of the vehicles involved in the accident. While that view of the request might have been grist for an objection to the request, it is not something we could consider having never been raised and decided below.

a prerequisite for preserving an appellate complaint, the complaining party must have made a complaint to the trial court by a timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). A party waives error when their argument on appeal does not comport with their argument in the trial court. *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170–71 (Tex. App.—Dallas 2009, no pet.) (and cases cited therein). NOV never filed a response to Sanchez's motion to exclude untimely evidence. Additionally, at the hearing on that motion, NOV disputed only that (1) "surveillance is not discovery under [the] discovery deadlines" (an argument it does not make on appeal) and (2) it had produced the video in September 2022, right after it was made, and it could not have produced it any earlier because it didn't exist then. At no point did NOV complain that the video was not responsive to any discovery request. So the trial court never considered that issue, and NOV failed to preserve that argument for our review.

The production of the video inside of 30 days before trial is therefore presumptively untimely, and NOV was charged with the burden of showing good cause for the tardiness, lack of unfair surprise, or lack of unfair prejudice. *See* TEX. R. CIV. P. 193.6. NOV never expressly argued for a good cause, unfair surprise or unfair prejudice exception below. We can assume, however, that the trial court made implicit findings that none of the arguments that NOV did make below supported those exceptions. *See Capital Metro. Transp. Auth./Cent. of Tennessee Ry. & Navigation Co., Inc., v. Cent. of Tennessee Ry. & Nav. Co.*, 114 S.W.3d 573, 583 (Tex. App.—Austin 2003, pet. denied) (stating that a finding of unfair surprise or prejudice is implicit in the court's ruling excluding untimely disclosed evidence); *Udcoff v. Castille*, No. 11-04-00274-CV, 2006 WL 2075244, at *10 (Tex. App.—Eastland July 27, 2006, no pet.) (mem. op.) (finding that the trial

11

court could have reasonably concluded that the statements of counsel at a hearing to exclude untimely disclosed evidence did not meet the burden of establishing good cause, unfair surprise, or unfair prejudice). We therefor address whether the trial court abused its discretion in those implicit findings.

On appeal, NOV limits its arguments to lack of unfair surprise or prejudice. It argues that Sanchez cannot be surprised by what he does at a worksite, and it is hardly prejudicial when the video was produced only three days late. But these specific arguments appear only in the appellate briefing, as NOV never made these unfair prejudice arguments below. Any argument on appeal claiming these specific reasons support the unfair surprise or prejudice exceptions is waived. TEX. R. APP. P. 33.1 (stating that a prerequisite for preserving error is to make a request, motion, or objection to the trial court explaining, with specificity, the grounds for the sought-after ruling). But even if not waived, one court has rejected the same argument. In *Oscar Luis Lopez v. La Madeleine of Texas, Inc.*, a defendant claimed that the plaintiff could not be unfairly surprised by video surveillance evidence capturing activities that contradicted his claimed physical limitations and inability to perform manual labor. 200 S.W.3d 854, 862 (Tex. App.—Dallas 2006, no pet.). The court concluded otherwise, stating that "[a]llowing the admission of undisclosed evidence as to a party's conduct of his or her own affairs would largely extinguish the Rule 193.6(a)'s exclusionary effect, and eviscerate the rule's salutary effect of promoting full and complete discovery." *Id.* at 863.

NOV also recasts its claim that the video was produced in September as proving a lack of unfair surprise. Its counsel stated at the hearing that he produced the video months earlier by providing a Dropbox link. Buttressing that, NOV adds that Sanchez never "offer[ed] any specific information" to disprove that the video had been produced in September, and never denied having

12

multiple conversations with NOV about the video. While an undisputed representation of counsel should be given weight by the trial court, *Jackson*, 675 S.W.3d at 6, we simply disagree that the representation here was undisputed. Sanchez's counsel produced and showed the judge an email chain between the parties purportedly contesting the claim that NOV had produced the video through "Dropbox."[12] That email chain is not part of the appellate record, nor is there any other evidence proving the video was disclosed in September. We don't find an "uncontested representation" that the video had been produced in September. Nor is it lost on us that NOV offered to produce proof of the September Dropbox production, but never did—either at the hearing, between the hearing and the time of trial, or at trial when it twice attempted to have the trial court revisit its earlier decision to exclude the video.

We overrule Issue Two.

### B. The trial court did not abuse its discretion by excluding the video for impeachment purposes.

In its fourth issue, NOV contends that the video is admissible as impeachment evidence, even if not timely produced. At trial, NOV attempted to use the surveillance video to impeach Sanchez over his testimony about his physical limitations. Sanchez testified that he does not lift heavy items at work and bends with difficulty. The video shows Sanchez lifting pipes a few inches off the ground as he maneuvered them on his forklift, bending at the waist to pick up trash, and dragging a trash can for some distance. NOV contends given Sanchez's testimony, it had no duty

---

[12] At one place, Sanchez's counsel argued the email chain showed he did not receive the video ("And, actually, what the e-mail shows is that we didn't receive it, because as Your Honor will see--do you want to see the e-mail, Judge?"). NOV relies on a different statement by Sanchez's counsel that qualifies that statement ("Well, what that shows, Judge, is we didn't--we didn't get a Dropbox, or we didn't see it. There's been no formal service under the rules of this stuff until December."). Without the emails being part of our record, we cannot say which is more accurate.

to disclose the video when used for impeachment purposes. The resolution of that argument starts with what version of the rules govern this case.

NOV points us to Rule 194, which controls the automatic disclosure of evidence, and which specifically exempts from automatic disclosure evidence intended solely for impeachment. *See* TEX. R. CIV. P. 194.4 (requiring parties to provide other parties with certain information about evidence it may present at trial *other than solely for impeachment*) (emphasis added); *id.* at 194.2 (requiring initial disclosure of a copy of the evidence a responding party has in its possession and which may be used to support its claims or defenses, *unless it is to be used solely for impeachment*) (emphasis added). Rule 194 was amended to specifically to mirror Federal Rules of Civil Procedure 26(a). *See* TEX. R. CIV. P. 194.6 (2021 comments). And NOV points us to one federal district court that held a surveillance video is not subject to mandatory disclosure when used to impeach a witness. *See Denty v. CSX Transp., Inc.*, 168 F.R.D. 549, 550 (E.D.N.C. 1996) (holding that evidence surveillance videos intended solely for impeachment is not discoverable under Fed. R. Civ. P. 26(a)(3), as discovery would "impair their impeachment value"); *but see Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517–18 (5th Cir. 1993) ("Assuming, however, that the tape is of some impeachment value, it is also of a substantive nature. Because the tape is, at the very least in part substantive, it should have been disclosed prior to trial, regardless of its impeachment value.").

But we decline to consider Rule 194 here because the current version does not govern this case. In its 2020 Order, the Supreme Court of Texas approved final amendments (effective January 1, 2021) to discovery Rules 190, 192, 193, 194, and 195. Tex. Sup. Ct., *Final Approval of Amendment to Texas Rules of Civil Procedure 47, 99, 169, 190, 192, 193, 194, 195, 196, 197, and 198*, Misc. Docket No. 20-9153 (Dec. 23, 2020). Those amendments added the present text of Rule

194 and its explicit reference to impeachment evidence. The amendments, however, generally only apply to cases filed on or after January 1, 2021. Misc. Docket No. 20-9153. Sanchez filed this suit in 2018. Consequently, we apply the discovery rules as they existed before the 2021 amendments. *See Monzingo*, 2023 WL 6632799, at *2 (noting that the pre-2021 rules apply to a case filed in 2018). [13]

Under the applicable rules, we conclude that the trial court did not abuse its discretion in excluding the video even for impeachment purposes. Trial courts have no discretion to admit untimely produced evidence absent an exception under 193.6. *Alvarado v. Farah Mfg. Co., Inc.*, *830* S.W.2d 911, 914 (Tex. 1992) (applying the predecessor to Rule 196.3). The Fifth Court of Appeals relied on this principal in holding that a trial court abused its discretion in allowing an undisclosed surveillance tape to be used at trial for impeachment purposes. *Lopez*, 200 S.W.3d at 859.

In *Lopez*, the plaintiff sued his employer for on-the-job injuries. *Id.* at 857. An issue in the case was the extent of his injuries. *Id.* Plaintiff requested discovery of "any tape recordings, pictures or videos of Plaintiff or any witness in this case." *Id.* The employer supplemented its response to say that it did not possess any evidence responsive to the request. *Id.* at 858. At trial, the employee testified about his physical limitations. *Id.* Wanting to impeach plaintiff, the employer successfully admitted a surveillance video taken after the discovery deadline that showed the employee performing landscape work, a task plaintiff had testified that he could no longer do. *Id.* The employer admitted to purposely withholding the video from disclosure but argued the video was solely intended for impeachment and was therefore admissible notwithstanding nondisclosure.

---

[13] Our analysis of Rule 193.6, discussed above, remains substantively untouched despite the 2021 amendments, which did nothing to change the mechanics of the Rule 193.6. We express no opinion on how current Rule 194 would change the outcome in this case.

*Id.* Suggesting that the plaintiff's testimony bordered on perjury, the trial court agreed to admit the video for impeachment purposes even if it were inadmissible for untimeliness. *Id.* at 859.

The court of appeals reversed, finding the trial court erred in admitting the undisclosed video. *Id.* at 863. According to the court, the employer's argument that the undisclosed evidence could be used solely for impeachment was discredited by the rationale from the Texas Supreme Court's decision in *Alvarado* that to excuse untimely discovery designations—without a showing of good cause—would frustrate the expectation that the rules will be enforced equally against both side. *Alvarado*, 830 S.W.2d at 914. From this, the Dallas court in *Lopez* reasoned that allowing the admission of undisclosed evidence for impeachment purposes invites an end-run to discovery rules by allowing a party to obtain discovery material that renders its discovery responses incomplete or incorrect, and then opt to withhold that evidence for later use at trial if it feels an opponent is "testifying incorrectly." *Lopez*, 200 S.W.3d at 861. Ultimately, the *Lopez* court held that under the discovery rules, which require exclusion of the evidence even for impeachment purposes, the trial court erred in admitting the video since no exception applied. *Id.* at 863.

We similarly conclude that under the rules governing this case, the trial court did not err in excluding the evidence even for impeachment purposes because, as established above, the evidence was untimely produced, and the record does not support any exception to the tardy disclosure.

Finally, NOV argues that Sanchez opened the door for the admission of the video by leaving a false impression with the jury through his testimony about his physical limitations. In NOV's view, Sanchez opened the door to the surveillance video when he testified to limitations such as with bending and lifting pipes at his job. The reality of Rule 193.6 is that it operates without respect to the impeachment value of the proffered evidence. Its language allows only two

16

exceptions to the mandatory and automatic exclusion of untimely disclosed evidence: (1) good cause or (2) lack of unfair surprise or unfair prejudice. TEX. R. CIV. P. 193.6. NOV does not characterize "opening the door" as good cause. NOV does not cite, nor does our research find, case law that embraces "opening the door" as a distinct means to excuse the untimely designation of evidence. We overrule this Issue Four.

### C. The trial court did not abuse its discretion by excluding Dr. Gundanna's testimony about the video.

NOV's fifth issue claims that the trial court abused its discretion by excluding Dr. Gundanna's testimony about his impressions and opinions of the surveillance video and Plaintiff's ability to engage in physical labor at his worksite. During the offer of proof, Dr. Gundanna stated he reviewed the video and observed Sanchez engaging in several physical tasks. He observed that Sanchez "moved around easily and without any sort of painful gait or painful stance. [Sanchez] was lifting and moving without any restrictions, . . . and it did not appear . . . that he had any physical restrictions in doing relatively heavy labor activities repetitively."

We do not discount that a properly qualified expert might be able to form opinions from video evidence. *See JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830 (Tex. 2018) (holding that trial court erred in excluding under Rule 403 evidence from medical expert who reviewed plaintiffs medical and psychiatric records—and video of an accident—to conclude the plaintiff was off his prescribed medications). But even assuming Dr. Gundanna's testimony was otherwise relevant and admissible as expert testimony, it still could be excluded as not timely disclosed. While NOV designated Dr. Gudnanna as an expert, even its untimely December 27th second supplemental responses to requests for disclosure does not mention the video surveillance as a basis for the doctor's opinions or that he had reviewed it. On appeal, Sanchez argues that the expert's testimony is subject to exclusion under Rule 193.6 because NOV never supplemented its expert disclosures

17

to state that the video was a basis for Dr. Gundanna's expert opinion. *See* TEX. R. CIV. P. 195.5 (requiring disclosure of an expert's "mental impressions and opinions and a brief summary of the basis for them"). And allowing Dr. Gundanna to testify about his observations regarding the video would undercut Rule 193.6, which requires exclusion of the evidence altogether. *See Lopez*, 200 S.W.3d at 861 (stating the discovery rules do not allow for gamesmanship under the guise of defending the sanctity of the judicial process). We therefore overrule NOV's fifth issue.

### D. Applicability of *Diamond Offshore*

In the first, third, and fourth issues, NOV invokes the Texas Supreme Court's opinion in *Diamond Offshore*, arguing that the trial court erred in excluding the surveillance video without ever watching it. Having not seen the video, NOV argues that the trial court failed to appreciate its probative value in proving or disproving the extent of Sanchez's injuries—a key issue in this case—and in discrediting Sanchez's testimony about his injuries.

The court in *Diamond Offshore* held that when the contents of a video are at issue, "as a general rule, a trial court should [as a proper exercise of discretion] view video evidence before ruling on admissibility." *Diamond Offshore Services Ltd.*, 542 S.W.3d at 546. In that case, an employee was injured while working on a drilling rig. *Id.* at 543. His treating physician declared him totally disabled from those injuries. *Id.* Yet the results of a functional capacity test and the questionnaire used as part of the test suggested that the plaintiff could perform physical labor with some restrictions, and the plaintiff was exaggerating his symptoms. *Id.* Thus, the employer hired an investigator to surveil the employee. *Id.* The surveillance video depicted the employee engaging in several physical tasks, contrasted with his testimony at trial that he was in constant pain, could not hold a job, and could no longer engage in other activities he enjoyed before his injures. *Id.*

The employer offered the surveillance footage as impeachment and substantive evidence. The employee objected under Texas Evidence Rule 403, arguing the video was misleading because it did not fairly represent his disabilities and his pain. *Id.* at 544. The trial court excluded the evidence as both substantive and impeachment evidence under Rule 403, and the employee was awarded significant damages. *Id.*

The Texas Supreme Court reversed, finding the trial court abused its discretion by not first watching the surveillance video. *Id.* at 545. The court stated that "trial courts should undertake their best efforts in attempting to view the subject visual recording prior to ruling on its admissibility. Exceptions should be few and far between." *Id.* at 547 (internal quotations omitted). Only then can courts engage in a balancing analysis of the evidence's probative value and prejudicial effect. *Id.* The court then concluded that the prejudicial value of the evidence did not substantially outweigh its probative value. *Id.* at 551. The court agreed with the employer that the video was probative of the employee's physical abilities and associated pain, which went to the damage issue and the employee's credibility. *Id.* at 548.

We of course have no disagreement with *Diamond Offshore*—we simply find it does not apply to the issues raised here. The trial court here did not exclude the video based on Rule 403's balancing analysis, which requires assessing a piece of evidence's probative value compared to an assessment of any unfair prejudice. Here, the video was excluded because it—and the two witnesses who took the video—were not timely disclosed. The exclusion was not under the rules of evidence, but the rules of procedure. And the first-level of inquiry under procedure Rule 193.6 asks only if the evidence was timely produced. And that first-level inquiry operates independent of whether the evidence is highly probative, somewhat probative, or not probative at all.

We acknowledge the second-level of inquiry under the rule for two exceptions to the automatic exclusion: (1) good cause for the late disclosure or (2) lack of unfair surprise or prejudice. What the video might show is not germane to the good cause inquiry. That question turns on *why* the evidence was disclosed late and not what it may show. The unfair surprise or prejudice inquiry *might* implicate what the video shows, but if any unfair surprise or prejudice argument was made below, it was that the video had been turned over through a Dropbox link some months earlier. Nothing was argued below about how the nature of the footage did not unfairly surprise or prejudice Sanchez.

We thus conclude that *Diamond Offshore* does not control the outcome here. *See id.* at 546 ("trial court[s] should view video evidence before ruling on admissibility *when the contents of the video are at issue*.") (emphasis added). We overrule Issues One, Three, and that part of Issue Four complaining that the trial court did not view the video.

NOV's last issue argues that the improper exclusion of the video was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See Gee v. Liberty Mut. Fire Ins.*, 765 S.W.2d 394, 396 (Tex. 1989). Because we do not find that excluding the evidence was error, we decline to address the harm the issue. Issue Six is overruled as moot.

## CONCLUSION

We overrule NOV's claims that the trial court abused its discretion in excluding evidence of the surveillance footage as substantive evidence, impeachment evidence, and as the basis for expert opinion. We affirm the judgment below.

JEFF ALLEY, Chief Justice

20

February 9, 2024

Before Alley, C.J., Palafox, and Soto, JJ.